UNITED STATES v. 254.35 ACRES OF LAND IN CADDO PARISH, LA., et al.

No. 493.

District Court, W. D. Louisiana, Shreveport Division.

Sept. 29, 1942.

Malcolm E. Lafargue, U. S. Atty., John A. Patin and Jared Y. Fontenot, Asst. U. S.

Attys., and J. P. Wallace, Sp. U. S. Atty., all of Shreveport, La., for plaintiff.

Tucker, Bronson & Martin, of Shreveport, La., for Board of Commissioners of Caddo Levee Dist.

Hussey & Smith, of Shreveport, La., for defendants.

PORTERIE, District Judge.

The above-entitled suit was instituted on June 24, 1941, at the request of the War Department in the name of the United States, "under the provisions of Section 9 of the River and Harbor Act approved August 8, 1917, 40 Stat. 267, 333 U.S.C.A. § 593, to condemn the fee simple title to 5.49 acres, designated as tract No. 3, and the flowage easement to 248.86 acres, designated as tract No. 3-A, both in Caddo Parish, Louisiana, for use in connection with the Wallace Lake Dam and Reservoir Project. It is also requested that an order be obtained authorizing the United States to take immediate possession of tract No. 3 at the time of filing petition as provided in Section 5 of the Act of July 18, 1918, 40 Stat. 911, 33 U.S.C.A. § 594, and further that the Caddo Levee District be required to deposit into the registry of the court funds sufficient to cover awards and costs at the time of the filing of petition and obtaining order of immediate possession in lieu of bond." Quotation is from certificate of the Department of Justice directing the local District Attorney to file the suit. The petition of the United States of America is in direct consonance with this above-quoted direction. The expropriation case accordingly went to a jury and the jury fixed the value. The defendants have filed a motion to tax, as costs, the fees of expert witnesses employed by them in the proceeding, relying particularly upon Section 9 of the Rivers and Harbors Act approved August 8, 1917, 40 Stat. 267, 33 U.S.C.A. § 593, under which the Secretary of War is authorized to bring the proceedings:

"Whenever any State, or any reclamation, flood control or drainage district, or other public agency created by any State, shall undertake to secure any land or easement therein, needed in connection with a work of river and harbor improvement duly authorized by Congress, for the purpose of conveying the same to the United States free of cost, and shall be unable for any reason to obtain the same by purchase and acquire a valid title thereto, the Secretary of War may, in his discretion, cause proceedings to be instituted in the name of the

United States for the acquirement by condemnation of said land or easement, and it shall be the duty of the Attorney General of the United States to institute and conduct such proceedings upon the request of the Secretary of War: *Provided, That all expenses of said proceedings and any award that may be made thereunder shall be paid by such State, or reclamation, flood control or drainage district, or other public agency as aforesaid, to secure which payment the Secretary of War may require such State, or reclamation, flood control or drainage district, or other public agency as aforesaid, to execute a proper bond in such amount as he may deem necessary before said proceedings are commenced."* (Italics supplied.)

▉ The government contends for many principles, declared in cases cited, with which we take no issue. We quote in full from the government brief, as follows:

"The constitutional mandate of just compensation does not require reimbursement of an owner for his attorneys' fees and other litigation expenses in defending a condemnation proceeding. Dohany v. Rogers, 1930, 281 U.S. 362, 368 [50 S.Ct. 299, 74 L.Ed. 904, 68 A.L.R. 434]. Immunity from costs is a sovereign attribute of the United States, United States v. Chemical Foundation, Inc., 1926, 272 U.S. 1 [47 S.Ct. 1, 71 L.Ed. 131], and in the absence of a specific provision in the applicable federal statutes, the United States is not liable for costs in condemnation proceedings, notwithstanding the federal conformity acts and state statutes and practice. United States v. Knowles' Estate [9 Cir.], 1932, 58 F.2d 718; Kanakanui v. United States [9 Cir.], 1917, 244 F. 923; In re Post Office Site [2 Cir.], 1914, 210 F. 832; Carlisle v. Cooper [2 Cir.], 1894, 64 F. 472; Ingram Day Lumber Co. v. United States, 1938, 87 Ct.Cl. 468, certiorari denied 1938, 305 U.S. 638 [59 S.Ct. 105, 83 L.Ed. 411]; United States v. Wade [D.C.] D.Idaho, 1926, 40 F.2d 745; In re Hastings Lock and Dam [D.C.] D.Minn.1932, 2 F. Supp. 324, 329. It is immaterial whether or not a declaration of taking has been filed. The sole determinant is whether a federal statutory provision directs the assessment of costs."

No case by either side is given directly interpretative of the language "That all expenses of said proceedings and any award that may be made thereunder shall be paid by such State, or reclamation, flood control or drainage district, or other public agency

as aforesaid, * * *." We have made a rather exhaustive research and find no decision.

The government offers the case of United States v. Knowles' Estate et al., supra, as being directly in point. We quote from the case, as follows: "The petition filed by the government in the condemnation proceedings in the court below recites that they are based upon the Act of May 16, 1906, 34 Stat. L., pt. 1, page 196 (33 U.S.C.A. § 592). The government's brief, however, makes no mention of that act, but seems to rely upon the Act of July 2, 1917, 40 Stat. L. 241 (50 U.S.C.A. § 171). The latter act contains the following provision: '* * * such proceedings to be prosecuted in accordance with the laws relating to suits for the condemnation of property of the States wherein the proceedings may be instituted.' The act of 1906 contains no similar provision." Clearly, the holding of that case has nothing to do with the interpretation of the statute involved here; it would have much to do, if the Act of 1906, 33 U.S.C.A. § 592, had been used and interpreted. The same language we have to interpret in Section 593 appears in Section 592.

■ Obviously, the Knowles case is under 50 U.S.C.A. § 171, as "the land was adjudged necessary for public use" on behalf of the War Department, involving "certain tide lands near Ft. Lewis, Wash." The case holds that the Conformity Act of June 1, 1872, 28 U.S.C.A. § 724, was not intended as a consent by Congress to waive the immunity of the government from judgments for damages or costs.

The next case that the government urges upon our consideration is that of Ingram Day Lumber Co. v. United States, supra. Digest writers (and we agree with them) summarize the applicable part of that case as follows: "The immunity of the government from judgments for damages or costs was not waived by the Conformity Act, 40 U.S.C.A. § 258." Federal Digest, Verbo, Courts, § 357i.

We think that these two cases are totally inapposite as involving an entirely different law. The laws of Louisiana have no application to this case.

The Congress, the proper source of authority, in our opinion, outlines in Section 593 the conditions of a contract between the United States and a "public agency", in this case that of the State of Louisiana (the Caddo Levee District), wherein the United States in the furtherance of "river and harbor improvement" (Wallace Lake Dam and Reservoir Project) is to sue and receive free of cost "land or easement" as its benefit, and the "public agency" is to pay "all expenses of said proceedings and any award" for the "land or easement" as its obligation—to benefit from the local public improvement, which is built and substantially, if not totally, subsidized by the Federal government.

■ So, we must conclude that the costs in this case, including the fees of expert witnesses employed by the defendants (to be fixed in amount in the discretion of this court) are to be paid by the Caddo Levee District, the "public agency" concerned with this proceeding.

"All expenses of said proceedings" is the language; we note the "all", and we also note the "said proceedings". This is ordinary English, and from the layman's lexicon "all expenses" would certainly be inclusive of the ordinary court costs, the ordinary witness fees, and also the fees of expert witnesses of both parties to the expropriation proceedings. The legal meaning of the words "all expenses" is certainly more inclusive than court costs, which generally include witness fees, ordinary and expert. See Words and Phrases, Perm. Ed., generally, Verbo, Expenses, vol. 15, pp. 675 to 690. After all, the Levee Board being desirous of paying the owner of the land in the expropriation proceeding the proper and correct value, the use of expert witnesses for the defendants theoretically, at least, points to the attainment of that object.

■ What of the question of sovereign immunity, since the jurisprudence has been during the existence of our republic to guard and protect jealously the immunity of the United States government in its sovereignty from liability for costs and expenses unless the statutes of Congress clearly and definitely provide for such liability? A reading of the whole of Section 593, 33 U.S.C.A., brings out clearly that the United States government will not pay the court costs, nor the witness fees, nor "all expenses of said proceedings", nor even the actual award for the value of the property; so it follows that this immunity of the sovereign is not at issue at all. The judgment for these witness fees will not be against the United States government or any of its agencies which inherit its original sovereignty, but the judgment will be against

the Caddo Levee District, or will be a judgment directing that the amount allowed for such expert witness fees be paid by the Clerk of Court from the money that the Caddo Levee District has on deposit with the Clerk.

The motion to assess the fees of defendants' expert witnesses against the Caddo Levee District is sustained, subject to the Court's direction in fixing the number of such witnesses and the amount to be paid to each.