296 So.2d 236

In re Chester McKINNEY

v.

CITY OF BIRMINGHAM.

Ex parte Chester McKinney, Petitioner.

SC 484 and SC 485.

Supreme Court of Alabama.

May 9, 1974.

Rehearing Denied June 6, 1974.

Ferris S. Ritchey, Birmingham, Robert Eugene Smith, D. Freeman Hutton, Atlanta, Ga., for petitioner.

Herbert Jenkins, Birmingham, for the City of Birmingham, respondent.

PER CURIAM.

Petitions of Chester McKinney for certiorari to the Court of Criminal Appeals to review and revise the judgments and decisions of that court in Chester McKinney v. City of Birmingham, [6–325, 6–326, 6–327, 6–328, 6–370, 6–371, 6–372, 6–373 and 6–374] affirmed June 29, 1973, without opinion.

On preliminary examination, the writs of certiorari were issued and the causes were set down for oral argument. Upon further consideration, after having heard the oral arguments and having studied the briefs, we are now of the opinion that the writs are due to be quashed as having been improvidently granted.

Writs of certiorari quashed.

MERRILL, COLEMAN, HARWOOD, BLOODWORTH, MADDOX, McCALL and FAULKNER, JJ., concur.

JONES, J., dissents.

HEFLIN, C. J., not sitting.

JONES, Justice (dissenting).

Petitioner, Chester McKinney, was convicted of violating the City of Birmingham Ordinance No. 67–2. This ordinance provides:

"Section 3. It shall be unlawful for any person to knowingly publish, print, exhibit, distribute or have in his possession with intent to distribute, exhibit, sell or offer for sale, in the City or the police jurisdiction thereof, any obscene matter."

The ordinance further defines obscene material as follows:

"A. 'Obscene' means that to the average person applying contemporary standards, the predominant appeal of the matter, taken as a whole, is to prurient interest, i. e., a shameful or morbid interest in nudity, sex, or excretion, which goes substantially beyond customary limits of candor in description or representation of such matters. If it appears from the character of the material or the circumstances of its dissemination that the subject matter is designed for a specially susceptible audience, predominant appeal shall be judged with reference to such audience. If the subject matter is distributed to minors under 18 years of age, predominant appeal shall be judged with reference to an average person of the actual age of the minor to whom such matter is distributed."

The petitioner challenges the constitutionality of this ordinance, claiming that it is repugnant to his rights under the First,

Fifth, and Fourteenth Amendments to the United States Constitution and prays that the Court declare it unconstitutional as being too vague.

The majority rejects this contention; and I concede that, applying the minimum standards set by recent United States Supreme Court decisions wherein identical or similar statutes have been upheld under the United States Constitution, we could not grant relief. Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973); Kaplan v. California, 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492 (1973); Heller v. New York, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973). To stop here, however, is to ignore two issues that yet remain:

(1) To what extent is the United States Supreme Court's interpretation of the minimum safeguard afforded by the United States Constitution controlling where the Alabama Constitution grants like or broader safeguards to personal freedom.

(2) In light of the individual rights protected by our State Constitution, as interpreted by this Court, is the city ordinance proscribing pornography constitutional?

As to the first issue, for far too long state constitutional freedoms have been overlooked, while all eyes have been cast upon the United States Constitution for the protection of civil liberties. Although state constitutions contain full statements of our civil liberties, on the whole the record of state court guardianship of "First Amendment Freedoms" is disappointing. Only occasionally do state cases concerned with freedom of press and speech take a position protecting the freedoms beyond what has been required by the United States Supreme Court. In a well-reasoned article, Professor Monrad G. Paulsen [1] states:

"State constitutions furnish extensive and sometimes unique materials which can help in the protection of human liberties and state courts provide the forums in

1. Associate Professor of Law, Indiana University, Bloomington, Indiana.

which a very great number of civil liberties cases are decided. Thus even when the argument for protection rests on Fourteenth Amendment grounds, the lower state courts and state supreme courts are in a strategic position to serve freedom of expression effectively. A case which stands for freedom in the state supreme court need be taken no further for the vindication of our deepest value."[2]

Thus, a brief lesson in constitutional law is in order. The First Amendment to the Federal Constitution declares, *"Congress* shall make no law . . . abridging the freedom of speech, or of the press . . . ." [Emphasis supplied]. The conduit through which the Bill or Rights is made obligatory on the states is the Fourteenth Amendment,[3] which provides:

"No *State* shall make or enforce any law which shall *abridge* the privileges or immunities of citizens of the United States; nor shall any *State deprive* any person of life, liberty, or property, without due process of law . . . ." [Emphasis supplied].

This in no way impedes a state from providing greater safeguards to civil liberties through the construction of its own constitution. Indeed, the Ninth and Tenth Amendments of the Federal Constitution envisage this fundamental truth. This is to say that, while the Federal Constitution establishes the minimum safeguards afforded all citizens of the United States, the state, through its own constitution, may provide even greater protection for civil liberties.[4]

Therefore, we need not concern ourselves with the battle still raging over the extent to which the First Amendment of the United States Constitution protects obscenity.[5] We need only look to our own State Constitution to find that freedom of expression is an absolute right. Alabama's analogous constitutional provision, Article I, § 4, reads:

"That no law shall ever be passed to curtail or restrain the liberty of speech

---

2. Paulsen, State Constitutions, State Courts and First Amendment Freedoms, 4 Vand.L. Rev. 620 (1951).

3. Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). It is interesting to speculate on the evolution of the doctrine of "selective incorporation" (which applies minimum federal standards) had the states assumed their rightful roles of enforcing the fundamental standards of due process guaranteed by the state constitutions. See Twining v. New Jersey, 211 U.S. 78, 29 S.Ct. 14, 53 L.Ed. 97 (1908); Palko v. Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937). See also Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

4. Mishkin v. New York, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966); Milky Way Productions, Inc. v. Leary, 305 F.Supp. 288 (S.D.N.Y., 1969). The state is free to give wider freedom of expression than the First and Fourteen Amendments require.

5. On the one hand the majority has continually held that the First Amendment has never been treated as an absolute. Breard v. Alexandria, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951). Obscenity is not constitutionally protected speech or press under this amendment. Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). Obscenity is not within area of constitutionally protected speech or press and may be regulated by the states. Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963). Obscene material is unprotected by the First Amendment. Miller v. California, supra.
On the other hand the Court has had to contend with the dissenting views of Justices Douglas and Black. Mr. Justice Black's most noteworthy statement in this area is:
"I read 'no law . . . abridging' to mean *no law abridging.* The First Amendment, which is the supreme law of the land, has thus fixed its own value on freedom of speech and press by putting these freedoms wholly 'beyond the reach' of *federal* power to abridge." Smith v. California, 361 U.S. 147, 157, 80 S.Ct. 215, 221, 4 L.Ed.2d 205 (1959) (Black, J., concurring). Mr. Justice Douglas, dissenting in *Roth* states:
"The First Amendment, its prohibition in terms absolute, was designed to preclude courts as well as legislatures from weighing the values of speech against silence. The First Amendment puts free speech in the preferred position."

or of the press; and any person may speak, write, and publish his sentiments *on all subjects,* being responsible for the abuse of that liberty." [Emphasis supplied].

The only limitation contained therein is that one may be held civilly responsible for the abuse of such liberty (i. e., slander, libel, etc.).[6] To add support to this rejuvenated reliance upon the state constitutional standard we should consider the most recent United States Supreme Court decisions of Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); Kaplan v. California, 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492 (1973), and Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973). In these "obscenity" cases the Court stated that the permissible scope of regulation is to be applied by the application of local community standards specifically defined by state law. The very foundation of any such regulation must be the state constitution itself.

We turn now to the second issue—to what extent may "obscenity" be regulated in light of the broad safeguards protecting freedom of expression, "on all subjects," as set out in the Alabama Constitution?

Regulation of obscenity necessarily involves the balancing of the right of expression against the right not to be exposed thereto. The problem under the Federal Constitution begins with the United States Supreme Court's declaration that obscenity is not protected by the First Amendment.[7] This has led to the problem of specifically defining obscenity so as not to be overbroad. For years the United States Supreme Court has had to assume the role of a Board of Censors in attempting to limit such statutory definitions. Here we face the impenetrable barrier—who is to interpret this definition as applied to spe-

cific material? While under Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), there was a national standard, under *Miller* there is now a state or local standard. This is not a solution to the problem, but merely a decentralization of the Board of Censors' role from the Supreme Court in Washington, D.C., to the supreme courts in the 50 states, or perhaps to a single individual in a local community.

*Miller* is an attempt to give obscenity standards an interpretation more congruous with that of the local community in which it is applied. It is here that I depart from the reasoning and holding of the majority, for I contend that such standards cannot be constitutionally applied. The standard of the community toward sexuality changes so rapidly that any standard would be subject to continuous re-evaluation.[8] As a practical matter, what excites one person may shock another person and bore another. On a jury of twelve there will be this same subjective determination based upon individual morals. It is my conviction that to invoke criminal sanctions on such tenuous ground will inevitably violate due process, and I interpret § 4 in the absolutism of its expression as the embodiment of this principle. Otherwise stated, I believe that the framers of our Constitution were keenly aware that anything less than literal construction of this safeguard (§ 4) would in and of itself be violative of the remaining guarantees of due process.

Where a particular area such as this is subject to such varying interpretations, the right of expression, per se—a basic fundamental of our democracy—should not be so arbitrarily deprived. Instead of passing this "hot potato," handed down to us from the United States Supreme Court, to the local communities and the ultimate triers of fact, I believe it is preferable to take the theoretically and practically more rational approach by embracing obscenity

---

6. See Paulsen, supra, at p. 623.

7. Ginsberg v. New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968).

8. See Cairns, Paul and Wishner, Sex Censorship: The Assumption of Anti-Obscenity Laws and Empirical Evidence, 46 Minn.L. Rev. 1009 (1962).

within the "all subjects" of the Alabama Constitution, Article I, § 4. Accordingly, I would hold that in the regulation of obscenity, the state's sole duty is to protect those of its citizens who do not consent to being actually (not constructively) subjected to behavior which they consider obscene. So too, minors, incapable of giving consent, are to be protected by the state.[9]

Outside of these two limitations (dictated by balancing constitutional considerations), the interest of freedom of expression must be preserved. The persons, excluding minors, who wish to be exposed to obscene material have the right,[10] just as those who wish not to be exposed have the constitutional right not to be so compelled. In making this available, the proprietor has the burden of not exposing those otherwise protected. In the instant case the absence of any potentially offensive advertisements and the presence of notices prohibiting minors and warning others of the content of the films, strikes the proper balance between the conflicting interests.[11]

In light of this balance of interests we must construe the current Alabama laws on obscenity which are found in Tit. 14, Chs. 64A, 64B, and 64C, § 374(1)–374(16o), Code of Alabama 1940, as amended. Chapter 64A states the general prohibitions and penalties concerning obscenity; chapter 64B speaks to the sale exhibition, etc., of obscene material to minors; and chapter 64C concerns such sale to persons over eighteen. I would hold chapter 64A and 64C unconstitutional as violative of the Alabama Constitution, Art. I, § 4. At the same time, I would hold chapter 64B is a constitutionally permissible restriction on the sale of obscene material.

The foregoing is not to say that I personally condone the widespread proliferation of obscenity in society today. Admittedly, when I view the material before us in these cases, I am possessed by a compelling force to strike out against such immorality. I, like most, feel a compulsion to use the legal process to castigate these degrading manifestations of the sacred expression of love and thereby vindicate my own personal attitudes. To describe this material (8 16-mm. film in one case and 2 magazines in the other) as dirty, filthy, lewd, "sick," offensive is to be overly charitable. I deeply resent any such overt and avowed purpose to take human sexuality—which is good, wholesome, and holy—and plunge its purity into the depths of degradation. I acknowledge an obsession to force others to conform to my own standards of morality and to punish those guilty of non-conformity. But I believe that the restraint against such inclination is the very essence of the constitutional safeguards of personal liberties; that is to say, the organic basis of our legal process—the State Constitution—purposefully bridles this compulsion for the sake of individual freedoms.

Any realistic approach to the proper role of society in such matters must start from the premise that controlling crime and safeguarding morals are different things. More than 700 years ago, St. Thomas Aquinas wrote: "Private sin is different from public crime and only the latter lies in the province of man-made law." The government is the proper agent for controlling crime, while primary guardians of morality are the family, the church, the community and the organs of public opinion. These institutions, not government, must be strengthened and given every aid

9. Ginsberg v. New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968).

10. Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). See also E. Keister, Jr., Crimes With No Victims at pp. 49–54 (1972). In the chapter entitled, "When Is a Movie Dirty?", the author notes the lagging laws on obscenity (specifically in

New York) and notes that statutes restricting one's right to such material have no place in the law. He suggests better regulatory institutions such as the home and church.

11. See Oregon Revised Statutes, Title 16, Chs. 167.060, 167.065, 167.070, 167.075, 167.080, 167.085, 167.090, 167.095 (1971).

to perform their function in the moral sphere—a sphere where government should not, and cannot, effectively reach. It is now time for the venue over obscenity to be withdrawn from the courts and the concern shifted to those personal levels in routine life where it belongs.

Long ago Socrates wisely said: "No man is so thoroughly right as to be entitled to say that others are totally wrong. It is well to affirm your own truth, but it is not well to condemn those who think differently."

In this spirit, I register my dissent.