319 So.2d 247

Carolyn Drake **WHITE** et al.

v.

**STATE of Alabama.**

SC 974.

Supreme Court of Alabama.

Sept. 11, 1975.

Rehearing Denied Oct. 2, 1975.

John H. Lavette, Birmingham, for appellants.

**504**

Arthur J. Hanes and Thomas Coleman, Sp. Asst. Attys. Gen., Birmingham, for the State.

MADDOX, Justice.

"Attorney's fees and expenses are not embraced within just compensation for land taken by eminent domain."

■ This short, concise and direct quote, taken from *Dohany v. Rogers,* 281 U.S. 362, 368, 50 S.Ct. 299, 302, 74 L.Ed. 904 (1930), sustains the trial court's judg-

ment that attorneys' fees and litigation expenses are not recoverable costs in an eminent domain proceeding.

The landowners, after a judgment was entered in circuit court based upon a jury verdict, filed a motion with the trial judge asking him to direct the circuit clerk to tax $35,000 as costs to pay their attorneys' fees and expert witnesses' fees. The court overruled their motion and they appealed. We affirm.

■ The landowners cite three broad theories to support their argument that they should recover their attorneys' fees and litigation expenses. First, they say that Title 19, Section 30, Code,[1] authorizes the court to tax these expenses as costs. We disagree. In a long line of cases this Court has held that in the absence of contract, statute, or recognized ground of equity, there is no inherent right to have attorneys' fees paid by the opposing side. *City of Vestavia Hills v. Randle,* 292 Ala. 492, 296 So.2d 710 (1974); *Johnson v. Gerald,* 216 Ala. 581, 113 So. 447 (1927); *Bell v. Bell,* 214 Ala. 573, 108 So. 375 (1926); Alabama Digest, Vol. 5–A, Costs, Key No. 172.

Where a statute does authorize the recovery of attorneys' fees, a landowner may recover them. *Mobile Housing Board v. Cross,* 285 Ala. 94, 229 So.2d 485 (1969). Title 19, Section 30, Code, does not authorize the recovery of litigation expenses, however.

■ The landowners' other theories are based on the proposition that attorneys' fees and expenses are embraced within "just compensation" in eminent domain proceedings.

1. "The costs of the application and proceedings thereunder, including the compensation of commissioners, who shall receive reasonable compensation to be fixed by the judge, must be adjudged and assessed against the applicant and his surety for costs, for which execution may issue. But should the applicant tender to the landowner or other party interested therein, prior to the application for condemnation, a sum of money in excess of that award-

ed by the commissioners, which tender he has kept good until the time of trial by paying the same into court to await the result of the proceedings, in which case the costs of the proceedings shall be taxed against the landowner or other party; but the commissioners awarding damages shall have no knowledge of the amount so tendered, and shall so certify in their award."

Although Alabama appellate courts apparently have not passed on this particular question, the Supreme Court of the United States has. In *Monongahela Navigation Co. v. United States,* 148 U.S. 312, 13 S.Ct. 622, 37 L.Ed. 463 (1893), Mr. Justice Brewer spelled out what the words "just compensation" mean. He wrote:

"The language used in the Fifth Amendment in respect to this matter is happily chosen. The entire amendment is a series of negations, denials of right or power in the government, the last, the one in point here, being, 'Nor shall private property be taken for public use without just compensation.' The noun 'compensation,' standing by itself, carries the idea of an equivalent. Thus we speak of damages by way of compensation, or compensatory damages, as distinguished from punitive or exemplary damages, the former being the equivalent for the injury done, and the latter imposed by way of punishment. So that if the adjective 'just' had been omitted, and the provision was simply that property should not be taken without compensation, the natural import of the language would be that the compensation should be the equivalent of the property. And this is made emphatic by the adjective 'just.' There can, in view of the combination of those two words, be no doubt that the compensation must be a full and perfect equivalent for the property taken. *And this just compensation, it will be noticed, is for the property, and not to the owner.* Every other clause in this Fifth Amendment is personal. 'No person shall be held to answer for a capital, or otherwise infamous crime,' etc. Instead of continuing that form of statement, and saying that no person shall be deprived of his property without just compensation the personal element is left out, and the 'just compensation' is to be a full equivalent for the property taken." [Emphasis added.]

█ The right to recover attorneys' fees from one's opponent in litigation as part of the costs thereof did not exist at common law. *See* annotation, Eminent Domain—Attorneys' Fees, 26 A.L.R.2d 1295.

Several state appellate courts have construed provisions in condemnation statutes and constitutions for the payment of compensation or "just compensation" as not to include attorneys' fees wihtin those terms. *United States v. 23.94 Acres of Land,* 325 F.Supp. 330 (D.C.Va.1970); *United States v. 254.35 Acres of Land,* 46 F.Supp. 913 (D.C.La.1942); *County of Los Angeles v. Ortiz,* 6 Cal.3d 141, 98 Cal.Rptr. 454, 490 P.2d 1142 (1971); *Pacific Gas & Electric Co. v. Chubb,* 24 Cal.App. 265, 141 P. 36 (1914); *Schneider v. Schneider,* 36 Colo. 518, 86 P. 347 (1906); *Seban v. Dade County,* 102 So.2d 706 (Fla.1950); *Bowers v. Fulton County,* 227 Ga. 814, 183 S.E.2d 347 (1971); *Ottumwa v. Taylor,* 251 Iowa 618, 102 N.W.2d 376 (Iowa 1960); *Welton v. Iowa State Highway Commission,* 211 Iowa 625, 233 N.W. 876 (1930); *Muskegon v. Slater,* 379 Mich. 466, 152 N.W.2d 652 (1967); *Petition of Reeder,* 110 Or. 484, 222 P. 724 (1924); *North American Realty Co. v. Milwaukee,* 189 Wis. 585, 208 N.W. 489 (1926).

Of course, when state statutes permit landowners to recover their litigation expenses, they may do so. *Mobile Housing Board v. Cross,* supra; *State of Washington v. Roth,* 78 Wash.2d 711, 479 P.2d 55 (1971).

We note that the Uniform Eminent Domain Code promulgated by the National Conference of Commissioners on Uniform State Laws at its annual meeting held in August, 1974, makes provision for a landowner to recover litigation expenses under certain circumstances. Section 1205 of the Uniform Eminent Domain Code provides:

"[*Recoverable Costs.*]

"(a) If the judgment determines that the plaintiff has the right to take all or part of the defendant's property, the costs incurred by the defendant shall be claimed, taxed and awarded to the de-

fendant by the same procedure as in other civil actions, except as otherwise provided in this section.

"(b) If the amount of compensation awarded to the defendant by the judgment, exclusive of interest and costs, is equal to or greater than the amount specified in the last offer of settlement made by the defendant under Section 704, the court shall allow to the defendant, in addition to costs allowed under Subsection (a) his litigation expenses, but not more than the greater of [ ] dollars or [25]% of the amount by which the compensation awarded exceeds the amount of the plaintiff's last offer of settlement made under Section 203 or Section 704.

"[(c) If the amount of compensation awarded to the defendant by the judgment, exclusive of interest and costs, is equal to or less than the amount specified in the last offer of settlement made by the plaintiff under Section 704, the defendant shall not be entitled to his costs incurred after the date of service of the offer.]

*"Comment*

"Section 1205 provides the basic rules governing the award and allocation of costs. For the definition of 'costs,' see Section 103(8).

"The general principle underlying this section, and expressed in Subsection (a), is that when the condemnor is determined to have the right to take the property in question, the recoverable costs of litigation should ordinarily be awarded to the defendant property owner. This rule appears to be generally accepted among American courts, and in some states is regarded as constitutionally required. See Levey, *Condemnation in U. S.A.* § 47, pp. 463–64 (1969).

"Subsections (b) and (c) are designed to correlate with the provisions of Section 704, under which either party may tender a final offer of settlement prior to trial. If such an offer by the defendant is not accepted, an award of litigation expenses is made to the defendant if he obtains an award more favorable than his final settlement offer. Subsection (b). Non-acceptance of a final offer of settlement by the plaintiff may result in a denial of costs to the defendant under Subsection (c), if the plaintiff obtains a result equal to or more favorable than the offer. Subsection (c), however, is in brackets to indicate that it should be omitted if a withholding of costs in the adopting state would violate state constitutional requirements."

Alabama has not adopted the Uniform Code or any other statute which would permit the landowners here to recover their litigation expenses.

Affirmed.

HEFLIN, C. J., and MERRILL, BLOODWORTH, ALMON, SHORES and EMBRY, JJ., concur.

FAULKNER and JONES, JJ., dissent.

JONES, Justice (dissenting):

I respectfully dissent. I would frame the issue thus: Does "just compensation", as constitutionally employed in eminent domain proceedings, mean full and unequivocally comprehensive payment, including attorney's fees and costs of litigation, for property taken? Alternatively stated, the sole and precise issue presented by this case of first impression is whether "reasonable compensation" is denied the property owner where he must pay the costs of litigation, including the attorney's fees, out of the award received based on his property's value?

I agree that Tit. 19, § 30, Code, does not support the property owner's position. In other words, I am in accord with the majority opinion that there is no statutory authority allowing the property owner attorney's fees or other costs incident to litigation.

The property owners next contend that fundamental justice and reason support their argument with respect to the term "just compensation", as that term is used in § 23 of Art. 1, Constitution of Alabama 1901. With this contention, I agree.

A condemnation proceeding is sui generis, totally unlike any other legal right, claim, or suit for damages known to our law. Issues of culpability, retribution for wrong, or civil liability comprise no part of such proceedings; and, unlike other civil actions, the right of recovery in a condemnation proceeding is rarely, if ever, contested. Consequently, the traditional rule allowing attorney's fees and other expenses only by statute, contract, or recognized equitable principles can hardly be said to control here.

While the power of eminent domain is an attribute of sovereignty, it is constitutionally restricted by the requirement: "unless just compensation be made therefor." This constitutional restriction recognizes that the sovereign power of appropriation is in derogation of the common and established inalienable right of property ownership. It is this expression embodied in the basic law which says in effect that while a taking of private property for public use can be forced and involuntary from the standpoint of the property owner, the citizenry that make up the body politic for whose benefit the property is taken must make whole such private owner from the common source.

As this Court has held, the purpose of condemnation is to effect an involuntary transfer of land, and eminent domain is in the nature of a forced sale of property rights for an amount of money equal to its value. *Beeland Wholesale Co. v. Kaufman,* 234 Ala. 249, 174 So. 516 (1937); *City Council of Montgomery v. Moore,* 140 Ala. 638, 37 So. 291 (1903); *London v. Sample Lumber Co.,* 91 Ala. 606, 8 So. 281 (1890). The safeguard, by which the State's inherent and unqualified power to appropriate private property is surrendered, is constitutionally mandated.

Thus, the procedure by which this mandate of "just compensation" may be effectually enforced in favor of the landowner cannot in reason and justice render him less than whole. A holding to the contrary writes into the meaning of "just compensation" a condition in derogation of the plain meaning of this term when taken in its constitutional context.

Necessarily, then, the definition of "just compensation" must be gleaned from the sui generis nature of condemnation proceedings. Alabama Pattern Jury Instructions, *Eminent Domain,* 14.05, contains the following definition:

"Just compensation means the payment of such sum of money to the property owner(s) that the owner(s) would be saved harmless as near as may be, and put in as near the same condition as such owner(s) would have been but for the taking."

Following the above suggested jury instruction, under "References," appears this supplemental definition:

"The owner is to be put in as good position pecuniarily as he would have occupied if his property had not been taken." APJI, 14.07, defines Market Value:

"Market value is the price the property would bring when offered for sale by a willing seller who is not forced to sell and which is sought by a willing buyer who is not required to buy, after due consideration of all the elements affecting value."

APJI, 14.15, contains the following instruction:

"The landowners are entitled to recover the reasonable market value of the property taken as of the date of the taking.

"The terms 'reasonable market value,' 'cash market value,' 'fair market value,' or 'fair cash market value' are considered substantially synonymous."

However scrupulously the jury by its verdict may heed these instructions, the

property owner, when required to bear his own expenses of litigation, is not put in as good position pecuniarily as he would have occupied if his property had not been taken; nor does the "willing seller/willing buyer" test become a reality in affecting a net recovery to the property owner for the value of the property taken.

The end result of these declarations of the law, which find their source in the constitutional use of the term "just compensation," can be affected from the standpoint of the property owner only if he is allowed the additional recovery of the necessary and reasonable expenses incurred in pursuit of his remedy.

Other courts who, in the absence of the express statutory authority, allow reasonable expenses as costs against the condemnor likewise ground their holding on the definition of "just compensation." The Supreme Court of Illinois in *Dickson v. Epling,* 170 Ill. 329, 48 N.E. 1001 (1897) stated:

"Where private property is taken or damaged for public use, just compensation cannot be made to the property owner if he is compelled to prosecute in the courts for his just rights at his own costs."

The Supreme Court of California in *City of Oakland v. Pacific Coast Lumber and Mill Company,* 172 Cal. 332, 156 P. 468 (1916) stated:

"It is settled law in this state that, in view of the provision of section 14 of article 1 of our Constitution that 'private property shall not be taken or damaged for public use without just compensation having first been made to, or paid into court for, the owner,' the owner whose property is thus sought to be taken cannot be required to pay any portion of his reasonable costs necessarily incidental to the trial of the issues on his part, or any part of the costs of the plaintiff; for to require him to do this would reduce the just compensation awarded by the jury by a sum equal to that paid by him for such costs."

To rebut this definition with the contention that the property owner need not resort to litigation and incur the expenses incident thereto begs the question. Such contention overlooks the involuntariness of the property owner's position in the first instance, as well as his unqualified right to pursue the matter in litigation to obtain the highest value contended for. It is only fair and just, therefore, that the condemnor who initiates the proceeding should bear the necessary and reasonable expenses incident to the involuntary position in which the property owner is placed.

Additionally, the property owners argue that to disallow expenses of litigation as a part of "just compensation" places an unfair weapon in the hands of the State in its negotiations with the property owner, and that this weapon is frequently used to compel the property owner to accept in settlement a sum less than the State's own appraised value. Whether this tactic is employed by the State, we need not decide; however, it is significant—indeed persuasive—that the subtle reality of this pressure exists even in the absence of any such overt threat. It is implicit in the very nature of the negotiations. The property owner knows that if he declines the State's offer, he must expend a substantial amount of the total value received for his property in making the recovery. He is put to a choice, then, of accepting the State's offer or litigating at his own expense. In any event, this interpretation of "just compensation," at best, unnecessarily encourages a waiver of the property owner's constitutional right to full recovery for the value of the property taken.

The converse, on the other hand, is not true. Any property owner who sought to gamble for a higher recovery at the condemnor's expense runs the risk of having the trial court disallow the expenses of litigation where in retrospect the refused offer was a reasonable one. Otherwise stated, suppose a property owner refuses a

$50,000 offer with the thought: "Why not litigate and risk a higher award since the costs of litigation is to be borne by the condemnor?" Suppose further that the jury awarded $40,000. In such event, the trial judge on motion for award of costs, applying the traditional rules governing such matters, could deny any additional recovery. This judicial discretion would serve as a safety valve against abuse by the property owner whereas no counterpart exists to stem abuse by the condemnor under the majority's interpretation.

The major opinion lays great stress on the interpretation of "just compensation" by the United States Supreme Court in *Dohany v. Rogers,* 281 U.S. 362, 50 S.Ct. 299, 74 L.Ed. 904 (1930). There the issue was whether the substantive due process clause of the 5th Amendment to the Federal Constitution requires "just compensation" to include attorney's fees and other costs of litigation in eminent domain proceedings. Here, the Alabama Supreme Court is asked to interpret its own State Constitution; and *Dohany* not only is not controlling, it is indeed poor precedent for the majority holding.

It is, to be sure, an anomaly of our jurisprudence that the United States Supreme Court has no difficulty in recognizing and applying the "independent state ground" doctrine while most state courts seem never to have heard of, much less apply, such doctrine.[1] Strikingly obvious, it seems to me, yet ignored by the majority, is the fact that minimum federal constitutional standards are not here in issue.

Finally, the State argues that, as a practical matter, condemnation awards, particularly jury verdicts, take into account items of necessary expenses incurred in litigation; and thus no declared interpretation favorable to the property owners' contention is necessary. This argument is to the effect that we should either condone or encourage dishonesty within the system. I would respectfully decline to do either. Any award which goes outside the bounds of competent testimony as to value of the property taken must, on review, be set aside as excessive. This Court should neither promulgate a new rule nor adhere to an old rule which has as its avowed purpose the condoning of false testimony as to value or which will reflect on the veracity of a jury verdict.

Rather, by our holding here, we should further assure the integrity of the system by recognizing and giving full effect to the rule of damages heretofore alluded to (APJI), and by permitting the trial court, upon motion of the property owner following the verdict, to assess as costs the necessary and reasonable expenses, if any.

I would reverse and remand.

FAULKNER, J., concurs.

---

1. See *Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975), in which Mr. Justice Blackmun, speaking for the majority said: ". . . a State is free *as a matter of its own law* to impose greater restrictions . . . than those this Court holds to be necessary upon federal constitutional standards." See also my dissent in *McKinney v. City of Birmingham,* Ala., 296 So.2d 236 (1974).