On Application for Rehearing.
The opinion of April 28, 2000, is withdrawn, and the following is substituted therefor.
In this condemnation action, the circuit court awarded the landowners their litigation expenses, including an attorney fee. The State appeals, arguing that the award was not authorized. We agree. Therefore, we reverse the judgment to the extent it awarded those expenses. The State has not challenged any other portions of the condemnation judgment. We remand the case for the circuit court to amend its judgment to make it consistent with this opinion.
 I.
Virgil Armstrong and Ann Neita Armstrong owned a 4.4-acre parcel of land in Escambia County; their residence was on that land. In order to widen U.S. Highway 31, the State sought a 1.68-acre strip of land running through the Armstrongs' property. The State's taking that 1.68-acre strip would leave the Armstrongs with two parcels: a 1.6-acre parcel on which their house is located and a 1.12-acre unimproved parcel on the other side of the highway. The State offered the Armstrongs $88,050 for the strip of land and the improvements on it. The Armstrongs refused that offer.
The State commenced a condemnation proceeding in the Escambia Probate Court, in accordance with Ala. Code 1975, § 18-1A-71 et seq. The result was a *Page 1213 
determination that the Armstrongs were entitled to $210,015 as just compensation for the taking. The State appealed to the circuit court for a trial de novo.
While the case was pending in the circuit court, the Armstrongs, with the circuit court's permission and over the State's objection, filed a "counterclaim for inverse condemnation," arguing that the State must acquire, and pay for, the entire 4.4-acre parcel. After all the evidence had been presented, the State moved for a judgment as a matter of law on the counterclaim. The circuit court denied that motion. The Armstrongs requested that the jury be given, in addition to a verdict form by which it was to assess just compensation for the taking, two interrogatories: "Do you find that the condemnation action initiated by the State of Alabama within this cause has damaged or injured any portion of the Armstrong real property not actually included within the condemned parcel?" and "If you[r] answer is `yes' to the foregoing question, has any portion of the damages awarded in this case been given as damages in response to the counterclaim presented by Mr. and Mrs. Armstrong alleging inverse condemnation?" Consistent with its position that the Armstrongs' counterclaim should not be presented to the jury, the State objected to the request for the interrogatories. Although it had denied the State's motion for a judgment as a matter of law on the counterclaim, the circuit court nevertheless sustained the State's objection to the interrogatories.[1] The court gave the jury a single verdict form that required only that the jury determine the amount of compensation to which the Armstrongs were entitled. The jury returned its verdict on that form, assessing just compensation at $148,250.
The Armstrongs moved for a new trial or, in the alternative, for an award of litigation expenses, including attorney fees. They argued that they were entitled to a new trial because, they argued, the circuit court had erred in allowing the State to introduce evidence concerning properties that the State's appraiser had relied on as "comparable" properties for valuation purposes. They argued that they were entitled to litigation expenses because, they argued, they had prevailed on their inverse-condemnation counterclaim. See Ala. Code 1975, §18-1A-32(b) ("The judgment and any settlement in an inverse condemnation action awarding or allowing compensation to the plaintiff for the taking or damaging of property by a condemnor shall include the plaintiff's litigation expenses"); § 18-1A-3(12) (defining "litigation expenses" as "[t]he sum of the costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, necessary to prepare for anticipated or participation in actual probate or circuit court proceedings"). The circuit court denied the Armstrongs' motion for a new trial, but granted their motion for an award of litigation expenses. The court then entered a judgment awarding the State the real property and improvements it had sought to acquire; awarding the Armstrongs $148,250 as compensation for the taking; and awarding the Armstrongs $21,070 for attorney fees and other litigation expenses.
The State filed a motion to alter, amend, or vacate the judgment or, in the alternative, for a new trial, arguing that the Armstrongs were not entitled to an award of litigation expenses. That motion was denied by operation of law when the circuit court failed to rule on it within 90 days. See Rule 59.1, Ala.R.Civ.P. *Page 1214 
 II.
On appeal, the State again argues that the Armstrongs are not entitled to recover their litigation expenses. We agree.
Regarding the power of eminent domain, this Court has stated that "`[i]n every government there is inherent authority to appropriate the property of the citizen for the necessities of the State, and constitutional provisions do not confer the power, though they surround it with safeguards to prevent abuse.'" Jonesv. Nashville, Chattanooga St. Louis Ry., 141 Ala. 388, 394,37 So. 677, 679 (1904) (quoting Cooley's Const. Lim., 356-57).
 "The Takings Clause of the Constitution of the United States provides:
 "`No . . . private property [shall] be taken for public use, without just compensation.'
 "U.S. Const. amend. V. This limitation on the power of the Federal Government to take property without just compensation also applies, through the Due Process Clause of the Fourteenth Amendment, to limit takings by state governments. See, e.g., Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992)."
Alabama Power Co. v. Citizens of the State of Alabama,740 So.2d 371, 389 (Ala. 1999). The Alabama Constitution of 1901 provides similar safeguards. See Ala. Const. of 1901, art. I, § 23, and art. XII, § 235.
An entity with the power of eminent domain has a legal duty to commence a condemnation action to exercise that power. See Ala. Code 1975, § 18-1A-32(a). However, when the State takes property without initiating a condemnation action and without paying just compensation to the property owner, the property owner has a cause of action for "inverse condemnation," by which he can recover just compensation for the taking. See, e.g., Ex parteCarter, 395 So.2d 65, 67 (Ala. 1980).
The Legislature has provided that a property owner who prevails in an inverse-condemnation action is entitled to recover litigation expenses in addition to just compensation for the taking. See Ala. Code 1975, § 18-1A-32(b). However, a landowner is not entitled to an award of litigation expenses in addition to just compensation when the condemning authority brings a direct-condemnation action against the landowner. See White v.State, 294 Ala. 502, 504, 319 So.2d 247, 247-48 (1975). In Whitev. State, this Court held that, because no statute authorized the defendant in a condemnation action to recover attorney fees and other litigation expenses, the common-law rule applied, i.e., that "`[a]ttorney's fees and expenses are not embraced within the just compensation for land taken by eminent domain.'" 294 Ala. at 504,319 So.2d at 247 (quoting Dohany v. Rogers, 281 U.S. 362, 368
(1930)). This Court also noted that Alabama had not adopted the Uniform Eminent Domain Code, § 1205 of which provided for the defendant in a condemnation action to recover litigation expenses under certain circumstances. 294 Ala. at 505-06,319 So.2d at 249. Although Alabama did adopt portions of the Uniform Eminent Domain Code in 1985, see Ala. Code 1975, § 18-1A-1 et seq., it did not adopt § 1205. Therefore, the White rule still applies.
When the condemning authority seeks to acquire less than all of a parcel of property, the landowner is entitled to "the difference between the fair market value of the entire property before the taking and the fair market value of the remainder after the taking." Ala. Code 1975, § 18-1A-170(b). Therefore, as a general rule, the landowner need not file an inverse-condemnation counterclaim in order to recover the decrease in the value of the remainder of his property. To allow such a counterclaim would effectively overrule White and allow the landowner to recover litigation expenses in virtually every partial-taking case simply by asserting a counterclaim alleging inverse condemnation. *Page 1215 
We should not be misunderstood as stating that a landowner may never assert an inverse-condemnation counterclaim in a condemnation action. Clearly, if the condemning authority has actually or constructively taken more property than it seeks in its condemnation action, the landowner may assert an inverse-condemnation counterclaim to recover just compensation for the additional property taken.
The Armstrongs asserted their inverse-condemnation counterclaim seeking to recover the fair market value of the entire 4.4-acre parcel. They argued, in reliance on Ala. Code 1975, § 18-1A-28, and State v. Brennan, 595 So.2d 458 (Ala. 1992), that the State must acquire, and pay for, the entire parcel because, they contend, the entire parcel would be "adversely affected by the State's use of the real property that it was seeking to condemn." Brennan, 595 So.2d at 461. Specifically, in support of their counterclaim they argue that § 18-1A-28 provides that when "a condemnor acquires an interest in any real property, [it] `shall also acquire at least an equal interest in all buildings, structures and other improvements . . . which will be adversely affected by the use to which the real property will be put.'" (Omission in the counterclaim.)
A reading of § 18-1A-28 in full does not support their position. That section provides, in full:
 "A condemnor that acquires any interest in real property shall also acquire at least an equal interest in all buildings, structures, or other improvements located upon the real property acquired, which the condemnor requires to be destroyed or removed or which will be adversely affected by the use to which the real property will be put."
(Emphasis added.) Thus, when a condemning authority acquires land, it must also acquire the improvements on that land if it requires that the improvements "be destroyed or removed" or if the improvements "will be adversely affected by the use to which the real property will be put." It is true that the landowner is entitled to "the difference between the fair market value of the entire property before the taking and the fair market value of the remainder after the taking," § 18-1A-170(b); however, we overruleState v. Brennan to the extent that it can be understood to hold that the condemning authority must acquire improvements not located on the land subject to direct condemnation simply because those improvements are "adversely affected by" the condemning authority's actions.
The circuit court's award of litigation expenses would be proper only if the Armstrongs had prevailed on their counterclaim. However, no part of the jury's verdict indicates that the Armstrongs prevailed on their counterclaim.[2] Moreover, such a finding for the Armstrongs on their counterclaim would be inconsistent with the rest of the circuit court's judgment, which awards the State only the 1.68-acre parcel and the improvements thereon — the parcel the State sought to acquire in its direct-condemnation action — and not the remaining property that the Armstrongs, by their inverse-condemnation counterclaim, sought to compel the State to acquire and pay for. Because nothing before this Court indicates that the Armstrongs succeeded on their counterclaim, we reverse the circuit court's award of litigation expenses to the Armstrongs.[3] We remand the case for *Page 1216 
that court to amend its judgment to make it consistent with this opinion.
OPINION OF APRIL 28, 2000, WITHDRAWN; OPINION SUBSTITUTED; AWARD OF LITIGATION EXPENSES REVERSED; CASE REMANDED WITH INSTRUCTIONS; APPLICATION OVERRULED.
Hooper, C.J., and Maddox, Houston, Cook, Brown, Johnstone, and England, JJ., concur.
Lyons, J., recuses himself.
[1] The court noted that the interrogatories submitted by the Armstrongs did not provide a way for the jury to indicate how much of the damages awarded were "in response to the counterclaim." The Armstrongs argued that the amount of damages awarded "in response to the counterclaim" was irrelevant because an answer indicating that they did prevail on the counterclaim was all that would be necessary to support an award of litigation expenses.
[2] The Armstrongs did object to the circuit court's failure to submit to the jury their requested interrogatories. However, the trial court did not abuse its discretion under Rule 49, Ala.R.Civ.P., in denying that request. The requested interrogatories did not ask the jury how much of the compensation was based on the inverse-condemnation counterclaim, nor did they provide any way for the jury to indicate what property it found the State to have actually or constructively taken other than the 1.68-acre parcel that was the subject of the State's direct condemnation action.
[3] The Armstrongs argue that the State cannot complain about the trial court's award of litigation expenses because, they argue, the State invited this error by objecting to their proposed special interrogatories. This argument, however, is misplaced. We recognize the "invited-error rule," the principle that "a party may not avail himself of error into which he has led the court."USA Petroleum Corp. v. Hines, 770 So. 589, 595 (Ala. 1999). The State's objection to the special verdict form did not "lead" the trial court into awarding litigation expenses to the Armstrongs. The fact that the trial court submitted a general verdict form to the jury actually "leads" to the opposite result — the denial of litigation expenses. Moreover, as we explained in note 2, the trial court did not improperly deny the Armstrongs' requested interrogatories.