HOUSTON, Justice
(dissenting).
Our review of the trial court’s summary judgment is de novo.
I doubt if any Alabama judge or Justice has had his or her property acquired by eminent domain as often as I have. The federal government acquired property in which I owned an interest for the im-poundment of Lake Eufaula (Lake Walter F. George) and later to establish a Canadian Goose Fly Way (the Eufaula Wildlife Refuge). The State of Alabama acquired property in which I owned an interest to create the Barbour County Wildlife Refuge and to extend and widen two roads (U.S. Highway 431 and Alabama Highway 165). Because of this personal experience, I am keenly aware of the supreme and plenary sovereign power of eminent domain.
“[T]he sovereign power of eminent domain is inherent in government as such, requiring no constitutional recognition, and is as indestructible as the state itself; and ‘that all private property, tangible and intangible, is held subject to the exercise of the right by the sovereign power
Adirondack Ry. v. New York, 176 U.S. 335, 346-47, 20 S.Ct. 460, 44 L.Ed. 492 (1900).
“Regarding the power of eminent domain, this Court had stated that ‘ “[i]n every government there is inherent authority to appropriate the property of the citizens for the necessities of the State, and constitutional provisions do not confer the power, though they surround it with safeguards to prevent abuse.” ’ ”
State v. Armstrong, 779 So.2d 1211, 1214 (Ala.2000) (quoting Jones v. Nashville Chattanooga & St. Louis Ry., 141 Ala. 388, 394, 37 So. 677, 679 (1904)).
The Takings Clause of the Constitution of the United States (U.S. Const., Amend.V) provides: “[P]rivate property [shall not] be taken for public use, without just compensation.” The Constitution of Alabama of 1901 provides similar safeguards. See Ala. Const. of 1901, Art. I, § 23, and Art. XII, § 235. These constitutional provisions provide the safeguards to prevent abuse.
The condemnation of the three tracts involved in this appeal is sought in connection with the Alabama Department of Transportation Project NHF-96(29) for the expansion and improvement of U.S. Highway 31 in Escambia County from south of State Highway 113 to north of County Road 35, a distance of about 3.5 miles. Project NHF-96(29), which was also the project involved in State v. Armstrong, supra, required the acquisition by the State of 45 tracts. The State has acquired title to 42 of those tracts, leaving only the acquisition of title to the three tracts involved in this appeal as necessary to complete the project.
*1095 At least $4,137,000 has been spent on the project thus far. The project was determined to be of public necessity in view of actual and projected increases in traffic volume on U.S. Highway 31, the need for an improved hurricane evacuation route, and safety concerns with the current condition of U.S. Highway 31, a two-lane highway. The project proposes to change U.S. Highway 31 from a two-lane highway to a four-lane divided highway and, in places, a five-lane undivided highway. The undisputed evidence shows that the improved roadway will be used by the public (which will benefit in that the new roadway will provide enhanced safety) and will move increased traffic more efficiently, which will help move people from affected areas in the event of an evacuation for a hurricane.
We are writing on a clean slate; therefore, I would hold that the State’s power of eminent domain is not so fragile that the subject lands are ipso facto released from liability to the public use (no matter how great a necessity may arise) because a lawyer, in attempting to appeal a probate court’s order, failed to timely file the notice of appeal in the probate office, but filed it instead in the circuit court’s office. The State’s right of eminent domain cannot be forever terminated by the failure to adhere to a procedural rule promulgated by this Court.
I would reverse and remand; therefore, I dissent.