MURDOCK, Justice.
The Alabama Department of Transportation (“ALDOT”) and its director John R. Cooper petition this Court for a writ of mandamus directing the Montgomery Circuit Court to vacate its order denying their motion to dismiss all claims filed against them by Asphalt Contractors, Inc. (“ACI”). We grant the petition in part and deny it in part.

I. Facts and Procedural History

Most of the factual background is succinctly explained in ACI’s original complaint.
“1. Trichloroethylene (‘TCE’) and other chemicals were used by ALDOT at its Coliseum Boulevard and Fairgrounds Road facilities since the early 1970s. The use, storage, handling, management, and/or disposal of TCE by AL-DOT was pursuant to the authority of [Cooper],
“2. TCE was used extensively by AL-DOT (or its predecessor agency) as a degreaser and/or cleaning agent and/or as a solvent. TCE was also used to test the suitability of various materials for use as a road pavement. TCE was used by ALDOT from the 1960’s through 1985. All of these activities were undertaken pursuant to the authority and approval of [Cooper].
“8. The practices and procedures used by ALDOT, its Director, officers, agents, and employees, resulted in on-site discharge and disposal of TCE. Spent TCE was poured into the sewer system until the late 1980’s. TCE then found its way into surrounding groundwater and soil.
“4. TCE is now contained in shallow groundwater, which is about 10' to 50' below land surface in an area in North Montgomery.
“5. Over a period of years, the TCE discharged and disposed of at the AL-DOT locations contaminated a plume of groundwater immediately beneath the Eastern Meadows, Vista View, and Chisholm residential communities. The contaminated plume of groundwater is known as the Coliseum Boulevard Plume (‘CBP’). The CBP is located in Montgomery, Alabama, and includes areas generally east of Lower Wetumpka Road, south of the CSX Railroad tracks and Northern Boulevard, and west of Emory Folmar Boulevard. However, the plume of contaminated groundwater has continued to migrate over a broader area.
“6. ACI operates sand and gravel mines on properties southwest of the CBP. North Montgomery Materials likewise operated sand and gravel mines on property adjacent to ACI’s property and southwest of the CBP.
[[Image here]]
“8. Hydraulic control is the method used to intercept, capture or control groundwater flow. It is a remedial technology that involves the use of de-watering systems (i.e., wells, pumps, excavation dewatering) to affect the movement of groundwater. ALDOT determined that a hydraulic-control system was capable of accomplishing a remedial objective of plume containment within a controlled boundary and minimizing exposure at the extraction point. “9. During its investigations, ALDOT discovered that the rate and direction of groundwater flow in the CBP was influenced by the dewatering operations in *733 the area of North Montgomery Materials, Inc. and ACI (i.e., known as the Southwest Area (‘SWA’)). The pumping of water affected the southwestward migration of the dissolved TCE groundwater plume. ALDOT determined through modeling that groundwater in the western part of the CBP could be controlled by continued, managed pumping at the SWA.
[[Image here]]
“11. ALDOT had a duty to remediate the CBP. ALDOT, incident to its responsibilities for investigation and remediation of the CBP, implemented an institutional Control Program (TCP’) to minimize exposure of the groundwater containing TCE and to prevent TCE contamination of deeper groundwater aquifers.
“12. ALDOT developed a Corrective Measures Implementation Plan for the western part of the CBP. The Interim Operating Plan for ALDOT utilized an interim operating plan to manage and maintain Hydraulic control over the groundwater in the western part of the CBP.
“13. In April 2009, ALDOT purchased the site [of] the former sand and gravel mine located west of Lower Wetumpka Road from North Montgomery Materials, Inc.
“14. ALDOT implemented the Hydraulic control features of the Interim Plan involved the use of a series of ponds through which groundwater moves [sic]. The ponds are located on the land purchased form North Montgomery Materials, Inc. and adjacent to ACI’s property. “15. The Dewatering Pond [is] located on the former North Montgomery Materials, Inc. property. Groundwater is captured by designed pumping into the Dewatering Pond. Water from the De-watering Pond is then pumped to the Transfer Pond which provides primary treatment and settling of solids in water. Water from the Transfer Pond is then pumped to the South Pond for additional treatment prior to discharge into a wetland area. Wetland vegetation in the South Pond provides treatment of the TCE-laden water. The water is then discharged into Three Mile Branch.
“16. Part of the South Pond sits atop property owned by ALDOT, and previously owned by North Montgomery Materials, Inc. and part atop property currently owned by ACI. Water which backs up from the South Pond sits atop property currently owned by ACI. Water from the South Pond then flows into a wetland area, part of which sits atop property owned by ACI. As such, AL-DOT is discharging TCE-laden water onto ACI property.
“17. Since at least April 2009, ALDOT has pumped groundwater into the Dewa-tering Pond and from there onto the Transfer Pond and then to the South Pond. A portion of the South Pond and wetland area used in ALDOT’s remedial efforts to treat the CBP is on ACI’s property, and as such, TCE is being discharged onto ACI’s property.
“18. On April 15, 2010, ACI demanded that ALDOT immediately cease all dumping of contaminated water on ACI’s property. However, the dumping of TCE-laden water onto ACI’s property has continued to the date of filing of this action.”
On April 12, 2011, ACI filed a “Petition for Temporary Restraining Order/Preliminary Injunction/Complaint” against AL-DOT and Cooper, in his official capacity as the director of ALDOT. The complaint asserted trespass to realty and inverse condemnation and made claims for injunc-tive relief. ACI requested damages for the full fair-market value of its property, consequential and incidental damages, *734 compensatory damages, punitive and exemplary damages, expenses, costs, interest, and attorney fees.
On May 12, 2011, ALDOT and Cooper filed a motion to dismiss the complaint in which they contended that the trial court lacked subject-matter jurisdiction because ALDOT and Cooper were entitled to State immunity. On May 19, 2011, ACI filed a response to ALDOT’s motion to dismiss. On July 13, 2011, ACI filed an amended complaint in which it added a claim that it was entitled to an injunction because, it says, ALDOT, through Cooper, acted fraudulently, in bad faith, beyond its authority, or under a mistaken interpretation of the law.
On July 15, 2011, the trial court held a hearing on the motion to dismiss and heard testimony and arguments concerning ACI’s request for a preliminary injunction. On July 27, 2011, the trial court entered an order denying the motion to dismiss, and it took ACI’s motion for a preliminary injunction under advisement.

II. Standard of Review

“ ‘It is well established that mandamus will lie to compel a dismissal of claim that is barred by the doctrine of sovereign immunity.’ Ex parte Blankenship, 893 So.2d 303, 305 (Ala.2004).
“ ‘A writ of mandamus is a
“ ‘ “drastic and extraordinary writ that will be issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.” ’
“Ex parte Wood, 852 So.2d 705, 708 (Ala.2002) (quoting Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala.1993)).
[[Image here]]
“ ‘ “[I]f an action is an action against the State within the meaning of § 14, such a case ‘presents a question of subject-matter jurisdiction, which cannot be waived or conferred by consent.’ ” Haley v. Barbour County, 885 So.2d 783, 788 (Ala.2004) (quoting Patterson v. Gladwin Corp., 835 So.2d 137,142-43 (Ala.2002)). “Therefore, a court’s failure to dismiss a case for lack of subject-matter jurisdiction based on sovereign immunity may properly be addressed by a petition for the writ of mandamus.” Ex parte Alabama Dep’t of Mental Health & Retardation, 837 So.2d 808, 810-11 (Ala.2002).’
“Ex parte Davis, 930 So.2d 497, 499-500 (Ala.2005).”
Ex parte Lawley, 38 So.3d 41, 44-45 (Ala.2009).
“ ‘In Newman v. Savas, 878 So.2d 1147 (Ala.2003), this Court set out the standard of review of a ruling on a motion to dismiss for lack of subject-matter jurisdiction:
“ ‘ “A ruling on a motion to dismiss is reviewed without a presumption of correctness. Nance v. Matthews, 622 So.2d 297, 299 (Ala.1993). This Court must accept the allegations of the complaint as true. Creóla Land Dev., Inc. v. Bentbroolce Housing, L.L.C., 828 So.2d 285, 288 (Ala.2002). Furthermore, in reviewing a ruling on a motion to dismiss we will not consider whether the pleader will ultimately prevail but whether the pleader may possibly prevail. Nance, 622 So.2d at 299.”
“ ‘878 So.2d at 1148-49.’
“Pontius v. State Farm Mut. Auto. Ins. Co., 915 So.2d 557, 563 (Ala.2005). We construe all doubts regarding the sufficiency of the complaint in favor of the *735 plaintiff. Drummond Co., 937 So.2d at 58.”
Ex parte Alabama Dep’t of Transp., 978 So.2d 17, 21 (Ala.2007).

III. Analysis

ALDOT and Cooper contend that they are immune from suit under Art. I, § 14, Ala. Const.1901. As to ALDOT, they are unquestionably correct.
“This Court has repeatedly held that § 14, Ala. Const.1901, ‘affords the State and its agencies an “absolute” immunity from suit in any court.’ Haley v. Barbour County, 885 So.2d 783, 788 (Ala.2004); see also Ex parte Mobile County Dep’t of Human Res., 815 So.2d 527, 530 (Ala.2001) (‘Pursuant to § 14, Ala. Const, of 1901, the State of Alabama and its agencies have absolute immunity from suit in any court.’); Ex parte Tuscaloosa County, 796 So.2d 1100, 1103 (Ala.2000) (‘Under Ala. Const, of 1901, § 14, the State of Alabama has absolute immunity from lawsuits. This absolute immunity extends to arms or agencies of the state....’). This absolute immunity from suit also bars suits for relief by way of mandamus or injunction. Ex parte Troy Univ., 961 So.2d 105, 110 (Ala.2006).”
Ex parte Alabama Dep’t of Transp., 978 So.2d at 22. See also Ex parte Alabama Dep’t of Transp., 985 So.2d 892, 895 (Ala.2007) (stating that “ALDOT is a State agency, and this Court has repeatedly held that the absolute bar of § 14 applies to the State and its agencies”). Thus, the trial court erred in denying the motion to dismiss ACI’s claims against ALDOT. We therefore grant the petition as to ACI’s claims against ALDOT.
ACI’s claims against Cooper, however, are another matter. This Court has repeatedly stated that there are general categories of actions against State officials that do not come within the prohibition of § 14. Those categories are:
“(1) actions brought to compel State officials to perform their legal duties; (2) actions brought to enjoin State officials from enforcing an unconstitutional law; (3) actions to compel State officials to perform ministerial acts; and (4) actions brought under the Declaratory Judgments Act, Tit. 7, § 156, et seq., seeking construction of a statute and its application in a given situation.... Other actions which are not prohibited by § 14 are: (5) valid inverse condemnation actions brought against State officials in their representative capacity; and (6) actions for injunction or damages brought against State officials in their representative capacity and individually where it was alleged that they had acted fraudulently, in bad faith, beyond their authority or in a mistaken interpretation of law.”
Drummond Co. v. Alabama Dep’t of Transp., 937 So.2d 56, 58 (Ala.2006) (first emphasis added).
ALDOT and Cooper correctly argue that ACI’s claim against Cooper in his official capacity alleging trespass to realty does not fall within any of the categories of so-called “exceptions” to State immunity.[1] Consequently, the trial court should have granted ALDOT and Cooper’s motion to dismiss ACI’s claim against Cooper alleging trespass to realty.
ALDOT and Cooper also contend that the trial court lacked jurisdiction over *736 the original complaint, so this Court should not consider the claim in ACI’s amended complaint for an injunction based on allegations that Cooper acted fraudulently, in bad faith, beyond his authority, or under a mistaken interpretation of the law. Whatever the merits of such an argument might otherwise be, the predicate for it in this case — that the trial court lacked jurisdiction over the original complaint — is incorrect. ACI’s original complaint stated an inverse-condemnation claim over which the trial court had jurisdiction.
“Regarding the power of eminent domain, this Court has stated that ‘“[i]n every government there is inherent authority to appropriate the property of the citizen for the necessities of the State, and constitutional provisions do not confer the power, though they surround it with safeguards to prevent abuse.” ’ Jones v. Nashville, Chattanooga & St. Louis Ry., 141 Ala. 388, 394, 37 So. 677, 679 (1904) (quoting Cooley’s Const. Lim., 366-57).
“ ‘The Takings Clause of the Constitution of the United States provides:
“ “‘No ... private property [shall] be taken for public use, without just compensation.”
“‘U.S. Const, amend. V. This limitation on the power of the Federal Government to take property without just compensation also applies, through the Due Process Clause of the Fourteenth Amendment, to limit takings by state governments. See, e.g., Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992).’
“Alabama Power Co. v. Citizens of the State of Alabama, 740 So.2d 371, 389 (Ala.1999). The Alabama Constitution of 1901 provides similar safeguards. See Ala. Const, of 1901, art. I, § 23, and art. XII, § 235.”
State v. Armstrong, 779 So.2d 1211, 1214 (Ala.2000). This Court has further explained:
“Generally, the State’s exercise of the power of eminent domain is accomplished through the statutorily regulated process of condemnation. See, e.g., State Dep’t of Transp. v. McLelland, 639 So.2d 1370 (Ala.1994). Section 18-1A-32(a), Ala.Code 1975, provides:
“ ‘(a) If property is to be acquired by a condemnor through the exercise of its power of eminent domain, the condemnor shall commence a condemnation action for that purpose. A con-demnor shall not intentionally make it necessary for an owner of property to commence an action, including an action in inverse condemnation, to prove the fact of the taking of his property.’
“This Court stated in Ex parte Carter, 395 So.2d 65, 67 (Ala.1980), ‘[i]nverse condemnation is defined as the taking of private property for public use without formal condemnation proceedings and without just compensation being paid by a governmental agency or entity which has the right or power of condemnation.’ ”
Alabama Dep’t of Transp. v. Land Energy, Ltd., 886 So.2d 787, 792 (Ala.2004). See also Jefferson Cnty. v. Southern Natural Gas Co., 621 So.2d 1282, 1287 (Ala.1993) (observing that “ ‘[ijnverse condemnation’ ... is a shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when the taking authority has not initiated condemnation proceedings”).
ALDOT and Cooper contend that ACI did not state a valid inverse-condemnation claim because it has not alleged that ALDOT committed an actual physical taking of its property for public use; rather, ACI has claimed that ALDOT injured its property through the pumping of TCE-laden *737 water onto its land. ALDOT and Cooper cite Willis v. University of North Alabama, 826 So.2d 118 (Ala.2002), in support of the distinction between a physical taking of property and injury to property.
In Willis, Donald Willis filed an inverse-condemnation action against the University of North Alabama (“UNA”), which had built a multilevel parking deck across the street from his property. Willis complained that the parking deck “damaged his property and caused the value of his property to decrease substantially.” Id. at 119. The Willis Court affirmed a summary judgment entered by the trial court in favor of UNA. In doing so, the Court overturned two previous cases — Foreman v. State, 676 So.2d 303 (Ala.1995), and Barber v. State, 703 So.2d 314 (Ala.1997)— which had “held that under § 23[, Ala. Const. 1901,] ‘“a governmental authority need only occupy or injure the property in question.” ’ ” 826 So.2d at 121. The Willis Court concluded that “those holdings [were] incorrect” because § 23, Ala.Const. 1901, requires that private property not be “taken” for public use without just compensation. Id. The Court noted that “the trial court assumed that Willis’s property was injured ...; however, since no portion of Willis’s property was ‘taken,’ or applied to public use by UNA, UNA was not required to compensate Willis under § 23 of the Constitution.” Id. ALDOT and Cooper argue that, like the property owner in Willis, ACI has claimed only that its property has been injured, not taken, and thus that ACI has not stated a valid inverse-condemnation claim under § 23.
ACI argues that it has stated a valid inverse-condemnation claim. It first notes that this Court has stated that “an inverse-condemnation action must be brought against a State official in his or her official capacity.” State v. Cornelius, 36 So.3d 504, 507 (Ala.2009). ACI named Cooper, in his capacity as director of ALDOT, as a defendant in its inverse-condemnation action. Moreover, ACI distinguishes Willis, observing that
“[u]nlike Willis, in the current case, there was a physical taking (i.e., a continued discharge of water onto ACI’s property) and that taking was properly pled in ACI’s complaint. ACI alleged that ALDOT ‘took’ ACI’s property by discharging TCE-laden water onto ACI’s property and using ACI property as a TCE filter.”
ACI’s brief, p. 19 (emphasis added). ACI further contends that “[b]y pumping water onto ACI’s property without first obtaining a drainage easement via appropriate eminent-domain proceedings, ALDOT improperly subjected ACI’s property to public use in violation of the constitution.” Id. at 20.
In its original complaint, ACI alleged that
“[w]ater from the Transfer Pond is then pumped to the South Pond for additional treatment prior to discharge into a wetland area. Wetland vegetation in the South Pond provides treatment of the TCE-laden water. The water is then discharged into Three Mile Branch.
“16. Part of the South Pond sits ... atop property currently owned by ACI. Water which backs up from the South Pond sits atop property currently owned by ACI. Water from the South Pond then flows into a wetland area, part of which sits atop property owned by ACI. As such, ALDOT is discharging TCE-laden water onto ACI property.
“17. Since at least April 2009, ALDOT has pumped groundwater into the Dewa-tering Pond and from there onto the Transfer Pond and then to the South Pond. A portion of the South Pond and wetland area used in ALDOT’s remedial efforts to treat the CBP is on ACI’s property, and as such, TCE is being discharged onto ACI’s property.”
*738 (Emphasis added.) The complaint further alleged that
“2. The State of Alabama and its agencies exercise the power of eminent domain as accomplished through the statutorily regulated process of condemnation.
“3. ALDOT, and [Cooper], in his representative capacity, as an agency of the State, [have] the right of power of eminent domain to acquire property for its use.
“4. Alabama Constitution Article 1, § 23 requires that the taking of any private property by the State be compensated. More specifically, private property shall not be taken for or applied to public use unless just compensation be first made therefor.
“5. Through its discharge of TCE-laden water upon ACI’s land, ALDOT and [Cooper], in his representative capacity, have damaged ACI’s real property. Such actions constitute a taking of ACI’s real property.
“6. The taking of ACI’s property for public use without formal condemnation proceedings and without just compensation being paid by ALDOT and [Cooper], in his representative capacity, constitutes inverse condemnation.”
(Emphasis added.)
Though it is true that ACI alleged that ALDOT and Cooper “damaged,” or injured, ACI’s property, it is also apparent that ACI alleged that ALDOT and Cooper appropriated ACI’s property for public use. ACI alleged that ALDOT, under Cooper’s direction, physically pumped chemically tainted water onto ACI’s property, used ACI’s property to help in the cleanup of TCE from area groundwater, and dumped at least a portion of the remaining water into ACI-owned wetland property. ALDOT and Cooper allegedly did all of this without initiating eminent-domain proceedings in order to use ACI’s private property for public use. Clearly, in this case, unlike in Willis, there has been a “physical invasion” of the plaintiffs land.[2]
*739 ALDOT and Cooper contend that even if we conclude that their actions constituted a taking for constitutional purposes, ACI’s inverse-condemnation claim is still barred by § 14 because ACI seeks to recover money from the State. ALDOT and Cooper note that this Court has recently stated:
“The ‘exceptions’ to § 14 are qualified by the general principle that ‘ “[a]n action is one against the [Sjtate when a favorable result for the plaintiff ... would result in the plaintiffs recovery of money from the [Sjtate.” ’ Alabama Agric. & Mech Univ. v. Jones, 895 So.2d 867, 873 (Ala.2004) (quoting Shoals Cnty. Coll. v. Colagross, 674 So.2d 1311, 1314 (Ala.Civ.App.1995)(em-phasis omitted)); see also Ex parte Butts, 775 So.2d 173, 177 (Ala.2000) (‘A complaint seeking money damages against a State employee in his or her official capacity is considered a complaint against the State, and such a complaint is barred by Art. I, § 14, Alabama Constitution of 1901.’). Further, this Court has held that actions to recover money damages from the State that seek to compel the payment of money the State is not legally obligated to pay pursuant to a contract are generally barred.”
Ex parte Murphy, 72 So.3d 1202, 1207-08 (Ala.2011). See also Ex parte Town of Lowndesboro, 950 So.2d 1203, 1206 (Ala.2006) (stating that “a party may not indirectly sue the State by suing its officers or agents ‘ “when a result favorable to plaintiff would be directly to affect the financial status of the state treasury ” ’ ” (quoting Patterson v. Gladwin Corp., 835 So.2d 137, 142 (Ala.2002), quoting in turn State Docks Comm’n v. Barnes, 225 Ala. 403, 405, 143 So. 581, 582 (1932) (emphasis added in Patterson))). Based on Murphy, ALDOT and Cooper contend that ACI cannot maintain its action because the result would be the recovery of monetary damages from the State.
Murphy stated that “actions to recover money damages from the State ... are generally barred.” Murphy, 72 So.3d at 1208 (emphasis added). A valid inverse-condemnation action is a clear exception to this general bar. This Court has stated:
“An entity with the power of eminent domain has a legal duty to commence a condemnation action to exercise that power. See Ala.Code 1975, § 18-1A-32(a). However, when the State takes property without initiating a condemnation action and without paying just compensation to the property owner, the property owner has a cause of action for ‘inverse condemnation, ’ by which he can recover just compensation for the taking. See, e.g., Ex parte Carter, 395 So.2d 65, 67 (Ala.1980).”
Armstrong, 779 So.2d at 1214 (emphasis added). The very point of an inverse-condemnation action is for the private-property owner to be able to recover compensation for the government’s use of his or her property that he or she would have received had the government initiated eminent-domain proceedings as it was supposed to do. It would make no sense for valid inverse-condemnation actions to fall *740 outside § 14 immunity and yet to conclude that such a plaintiff could not recover damages from the State.[3]
Because ACI stated a valid inverse-condemnation claim in its original complaint, the trial court had jurisdiction to entertain ACI’s amended complaint in which it modified its claim for injunctive relief by alleging that Cooper acted fraudulently, in bad faith, beyond his authority, or under a mistaken interpretation of law.[4] Specifically, ACI alleged in its amended complaint that
“ALDOT, by and through [Cooper], in his representative capacity, acted fraudulently], in bad faith, beyond his authority, or in a mistaken interpretation of law, by employing Hydraulic control measures with knowledge that its measures would necessarily involve the discharge of TCE-laden water onto ACI’s property; by failing to seek or obtain permission or consent from ACI prior to discharging TCE-laden water onto ACI’s property; and by taking ACI’s property and thereby obtaining and taking a draining easement without [AL-DOT’s] seeking or obtaining permission or consent from ACI.”
At a minimum, under the facts presented by ACI, it is possible for ACI to maintain a claim that ALDOT, through Cooper, *741 acted in bad faith. ACI stated in its complaint that ALDOT had been pumping water onto ACI property since April 2009 and that in April 2010 ACI had demanded that ALDOT immediately cease doing so but that ALDOT continued to do so. As of the date of the trial court’s order, July 27, 2011, the evidence was that ALDOT had not stopped pumping water onto ACI’s property, meaning that ALDOT had continued its action for nearly a full year after ACI demanded it stop doing so. Accordingly, sufficient facts were presented to state a claim of bad faith.
Because ACI stated a viable claim for injunctive relief based on allegations of bad faith, the trial court did not err in denying ALDOT and Cooper’s motion to dismiss that claim as to Cooper. Whether ACI can show further grounds at trial for application of the injunction exception to immunity is a matter that should be addressed at trial.

IV. Conclusion

The trial court erred in denying the motion to dismiss ALDOT as a party to this action. Conversely, the trial court did not err in denying the motion to dismiss as to ACI’s inverse-condemnation claim against Cooper in his official capacity. Likewise, the trial court properly refused to dismiss ACI’s claim for injunctive relief against Cooper. Accordingly, we grant the petition for a writ of mandamus in part and deny it in part.
PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
PARKER and WISE, JJ., concur.
MOORE, C.J., and BOLIN, SHAW, and BRYAN, JJ., concur in the result.
STUART, J., recuses herself.

. This Court has observed that "[t]hese actions are sometimes referred to as 'exceptions’ to § 14; however, in actuality these actions are simply not considered to be actions ' "against the State” for § 14 purposes.’ ” Alabama Dep’t of Transp, v. Harbert Int'l, Inc., 990 So.2d 831, 840 (Ala.2008) (quoting Patterson v. Gladwin Corp., 835 So.2d 137, 142 (Ala.2002)).

. In their reply brief, ALDOT and Cooper contend for the first time that ALDOT’s action of pumping water into the South Pond and subsequently pumping water into the wetlands cannot be considered a "taking” because testimony in the hearing in the trial court concerning whether the trial court should issue a preliminary injunction indicated that in approximately six weeks from the date of the hearing ALDOT would be diverting the water to a different pond. As a result, ALDOT and Cooper argue, ALDOT’s action is not a "permanent invasion” of ACI's property. ALDOT and Cooper likewise argue for the first time in their reply brief that ALDOT did not damage ACI's property because testimony in the hearing indicated that no trace of TCE had been found in the water pumped into the South Pond. The evidence adduced thus far includes the testimony of Buddy Cox, who is in charge of the TCE cleanup project, to which ALDOT and Cooper refer. Cox stated that ALDOT was awaiting a permit from the Alabama Department of Environmental Management to begin pumping water into an alternate pond. Cox indicated that ALDOT expected the permit to be forthcoming in six weeks, but there was no evidence indicating that receiving the permit was a foregone conclusion or that the use of ACI's pond definitely would cease in six weeks. Further, even assuming a diversion of the water did occur in six weeks, according to ACI's facts, ALDOT's pumping of water into the South Pond has been ongoing for two years. As to the contention that no trace of TCE has been found in the South Pond, even if this is true, ALDOT's pumping of water into the South Pond still constitutes the use of ACI’s property for public use. In other words, an absence of TCE from the South Pond, alone, does not preclude ACI’s inverse-condemnation claim. As presented in this case, the issue whether the use of the ACI’s property fails to qualify as a "taking” on the ground that it was not a "permanent invasion” is not of such a nature that this Court should address either the legal or factual questions raised by this issue with *739 out both parties having had the opportunity to brief it properly. (In addition, the question may require some further degree of factual development in the trial court.) See generally Arkansas Game <& Fish Comm'n v. United States,—U.S.—,—, 133 S.Ct. 511, 521, 184 L.Ed.2d 417 (2012) (holding that government action need not be permanent to qualify as a taking for purposes of the Fifth Amendment to the United States Constitution but stating that " 'temporary limitations are subject to a more complex balancing process to determine whether they are a taking.’ " (quoting Loretto v. Teleprompter Manhattan CATV Carp., 458 U.S. 419, 435 n. 12, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982))).

. We express no view on whether, assuming it prevails on its inverse-condemnation claim, ACI will be entitled to all the types of damages it has requested in its complaint. In Armstrong, this Court explained:
"When the condemning authority seeks to acquire less than all of a parcel of property, the landowner is entitled to ‘the difference between the fair market value of the entire property before the taking and the fair market value of the remainder after the taking.’ Ala.Code 1975, § 18 — 1 A — 170(b)."
779 So.2d at 1214 (also noting that "[t]he Legislature has provided that a property owner who prevails in an inverse-condemnation action is entitled to recover litigation expenses in addition to just compensation for the taking. See Ala.Code 1975, § 18-1A-32(b)”).

. In their reply brief, ALDOT and Cooper contend that because ACI focused the arguments in its brief on the validity of its inverse-condemnation claim, ACI "abandoned" all other claims in its complaint. Petitioners' reply brief, p. 2. Citing Ex parte Turner, 840 So.2d 132 (Ala.2002), ALDOT and Cooper contend that ACI’s alleged "failure to respond to the arguments in [the petitioners’] mandamus petition compels this Court to accept the petition's arguments as true.” Petitioners' reply brief, pp. 2-3. We reject ALDOT and Cooper’s argument. ALDOT and Cooper misstate the rule in Turner. The Court in Turner explained that the respondent in that case, by failing to "file an answer and brief,” "did not comply with this Court’s order.” 840 So.2d at 134. The Court concluded that the respondent’s "failure to respond to the allegations in [the] petition for a writ of mandamus compels this Court to consider the averments of fact in [the] petition as true.” Id. at 134-35 (emphasis added). The Turner Court did not state that it was compelled to accept the petitioner’s arguments as true but that it had to accept the petitioner’s presentation of the facts in the-absence of any facts being presented by the respondent. This Court cannot simply accept a mandamus petitioner’s arguments as true regardless of the arguments (or lack thereof) presented by the respondent because “[t]he burden of establishing a clear legal right to the relief sought rests with the petitioner.” Ex parte Metropolitan Prop. & Cas. Ins. Co., 974 So.2d 967, 972 (Ala.2007). "A writ of mandamus is a drastic and extraordinary writ”; thus, it is incumbent upon ALDOT and Cooper, as the petitioners, to convince this Court that they are entitled to immunity under § 14 concerning each claim made by ACI even if ACI elected to present counterarguments for only one of its claims. Ex parte Simpson, 36 So.3d 15, 22 (Ala.2009). Furthermore, though in its brief ACI primarily focused on the validity of its inverse-condemnation claim, it also argued that the trial court had jurisdiction to consider its amended complaint — and therefore its claim for injunc-tive relief — because the original complaint contained at least one claim not barred by § 14.