UNITED STATES of America,
Plaintiff,

v.

1,000 ACRES OF LAND, MORE OR
LESS, IN PLAQUEMINES PARISH,
LOUISIANA, and I. D. Zander, et al.,
Defendants.

Civ. A. No. 3362.

United States District Court
E. D. Louisiana,
New Orleans Division.

April 21, 1958.

some roads, in addition to building the canal, the Government also has built on the land condemned a pumping station, a drainage canal and certain roadways.

On February 5, 1952, the Government filed these proceedings and on February 7, 1952, an order of immediate possession was signed. This action concerns land condemned in Plaquemines Parish, Louisiana. Other property, in Orleans Parish, condemned for the alternate water connection, is the subject of other proceedings. The land in question here is undeveloped, low-lying land close to the Louisiana marshes. Because of the many different lots, parcels and tracts expropriated, a Commission was appointed pursuant to Rule 71A(h), Fed.R.Civ.P., 28 U.S.C.A., to take testimony and to fix the value of the property condemned. The Commission consisted of Dean Paul M. Hebert, School of Law, Louisiana State University, Dean Antonio E. Papale, School of Law, Loyola University, and Leonard Oppenheim, Professor of Law, Tulane University. Testimony was taken for forty-five full days and two days were spent by the Commission viewing the property by boat, by automobile, by truck and on foot.

Norton L. Wisdom, New Orleans, La., for the United States.

Deutsch, Kerrigan &·Stiles, Ralph L. Kaskell, Jr., New Orleans, La., for defendants Hero Lands Co., Hero Wall Co., New City Co., Numa C. Hero, Jr., Mrs. Numa C. Hero, Alvin A. Hero, and Jefferson & Plaquemines Drainage Dist.

Monroe & Lemann, Ralph N. Jackson, New Orleans, La., for defendants Edwin W. Hodge, Alex T. Hunt, Stewart S. Hunt, Carolyn Hodge Kroner, Otis E. Hodge, Jr., Gladys Virginia Hodge, Nancy Kimble Hodge, Lois Hodge Glassell, Mary Margaret Hodge Sour, Jayne Hodge Turbeville, Mary Elizabeth Hodge Fleming.

Milling, Saal, Saunders, Benson & Woodward, David J. Conroy, New Orleans, La., for defendants Jefferson J. Rebstock and Robert H. Reeves.

**J. SKELLY WRIGHT, District Judge.**

These proceedings arise from the condemnation by the Government [1] of a strip of land, approximately 800 feet wide and nine miles long running from the Mississippi River to Bayou Barataria, for the purpose of constructing an alternate waterway connection below the harbor of the City of New Orleans on the Intracoastal Waterway. Because the cutting of the new canal affected drainage problems in the area and cut off access to

■ The Commission's report, in 207 pages, carefully meticulously and painstakingly canvasses the evidence contained in the 6,113–page transcript and 450 exhibits. The report, finding the facts of valuation, severance damage and special benefit as to each lot, parcel or tract condemned, awarded just compensation as to each such lot, parcel or tract. This Court must accept the Commission's "findings of fact unless clearly erroneous." Rule 71A(h), Rule 53(e) (2), Fed. R.Civ.P. And a determination in this respect must be made with due regard for the Commission's function in weighing the conflicting evidence and judging the credibility of the witnesses. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 689, 66 S.Ct. 1187, 90 L.Ed. 1515; Tilghman v. Proctor, 125 U.S. 136, 149–150, 8 S.Ct. 894, 31 L.Ed. 664.

1. Under authority of Rivers and Harbors Act, 33 U.S.C.A. §§ 593, 594, 595.

## I.

Although the objections to the Commission's report as filed by the landowners constitute a veritable broadside against practically every finding by the Commission, their major complaints may be distilled down to four in number. At the outset, the landowners challenge the constitutionality of Section 6 of the Rivers and Harbors Act [2] in that that section of the Act requires that special and direct benefits to the remainder of a lot, parcel or tract, arising from the Government improvement for which the land is taken, shall be considered "by way of reducing the amount of compensation or damages" awarded. They argue that while special benefits may reduce the amount of severance damage, they cannot in any way affect the amount of compensation for the part actually taken. In this argument, the landowners have some support from the cases interpreting condemnation laws of various states. But the Supreme Court of the United States has held many times,[3] and with reference to this particular statute,[4] that special benefits may be set off not only against severance damage but against the value of the part taken as well.

▉▉▉ Admitting that these cases may be persuasive on the point, the landowners then argue that here, as to some lots, parcels or tracts, special benefits set off against the value of the part taken, as well as against severance damage, resulted in no award in money to the landowners. Certainly, they say, since they get no money at all for the part taken, they have been denied just compensation therefor. But the Fifth Amendment does not require payment in money. The constitutional command is "just compensation." And the Supreme Court has held that special benefits to the remainder of a lot, parcel or tract is just compensation for the part taken. Merely because the value of the special benefits is the same as, or greater than, the sum of the value of the part taken and severance damages to the remainder, thereby requiring no payment in money to the landowner, that does not mean, logically and mathematically it cannot mean, that just compensation has not been awarded to the landowner for the part taken. Money is but a medium of exchange. When just compensation is obtained through direct benefits to the remainder, use of the medium becomes unnecessary. The quotations, urged by landowners, from certain cases [5] which indicate that just compensation means money are aberrations which become clear when the full text of the opinions are read.

## II.

The landowners object to the Commission's refusal to consider the evidence proffered by them under Rule 43(c) concerning the question of seepage. They claim to have proved to a reasonable probability that seepage through the levees erected to contain the canal would, some time in the future, damage their

---

2. 33 U.S.C.A. § 595.

3. United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336; Bauman v. Ross, 167 U.S. 548, 17 S.Ct. 966, 42 L.Ed. 270. In Bauman v. Ross, 167 U.S. at page 584, 17 S.Ct. at page 980, the Court said:

"The constitution of the United States contains no express prohibition against considering benefits in estimating the just compensation to be paid for private property taken for the public use; and, for the reasons and upon the authorities above stated, no such prohibition can be implied; and it is therefore within the authority of congress, in the exercise of the right of eminent domain, to direct that, when part of a parcel of land is appropriated to the public use for a highway in the District of Columbia, the tribunal vested by law with the duty of assessing the compensation or damages due to the owner, whether for the value of the part taken, or for any injury to the rest, shall take into consideration, by way of lessening the whole or either part of the sum due him, any special and direct benefits, capable of present estimate and reasonable computation, caused by the establishment of the highway to the part not taken."

4. United States v. Miller, supra.

5. United States v. Miller, supra; Westchester County Park Commission v. United States, 2 Cir., 143 F.2d 688.

land adjacent thereto. In a preliminary hearing prior to submission of the case to the Commission, this Court held that seepage damage to a lot, parcel or tract, no part of which was condemned for the project, is consequential damage and not recoverable in the condemnation proceeding. United States v. Miller, supra, 317 U.S. at page 376, 63 S.Ct. at page 281; Sharp v. United States, 191 U.S. 341, 24 S.Ct. 114, 48 L.Ed. 211. Such damages are, under some circumstances, recoverable under the Tucker Act.[6] See United States v. Dickinson, 331 U.S. 745, 67 S. Ct. 1382, 91 L.Ed. 1789.

In its charge to the Commission on seepage damage to the remainder of a tract, part of which was taken in these proceedings, the Court stated, "In determining just compensation you should entirely exclude from consideration any elements affecting value which depend upon conditions or a combination of occurrences which, while within the realm of possibility, are not shown to be reasonably probable. In other words, you should exclude from consideration pure speculation or conjecture, basing your findings upon the relevant evidence." Landowners do not quarrel with this instruction. They simply maintain that seepage damage was proved to a reasonable probability.

The evidence on seepage, recorded but excluded, shows that in the opinion of at least one expert hired by the landowners, damage from seepage was "a reasonable probability" with respect to certain tracts, parts of which were condemned in these proceedings. Landowners, citing United States v. Dickinson, supra, suggest that this probability reduces the value of the remainder and should be considered in determining just compensation.

The "reasonable probability" of seepage damage foreseen by landowners'

expert apparently does not take into consideration the fact that the U. S. Engineers are the foremost builders and maintainers of levees in the world and that this experience will minimize, if not entirely eliminate, the possibility of a levee built and maintained by them allowing seepage. Consequently, any claim for seepage at this time is not only conjectural but is predicated on the unlikely assumption that the U. S. Engineers will be unable to prevent it. The Court, therefore, having considered the evidence on seepage excluded by the Commission, finds as a fact that there is no present proof thereof and that evidence of future seepage is conjectural and entitled to no weight in determining just compensation. Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236; United States v. Chandler-Dunbar Water Power Company, 229 U.S. 53, 33 S.Ct. 667, 57 L.Ed. 1063. In the event damage from seepage is suffered some time in the future, if both the Tucker Act[7] and the Federal Tort Claims Act[8] are unavailable, these landowners may apply to Congress for relief. Such procedure would not be unfamiliar to these landowners. They are experienced and effective Congressional pleaders.[9]

### III.

One of the claimants, the Jefferson-Plaquemines Drainage District, objects to the Commission's report because the report fails to award the District compensation for loss of assessments on the land condemned. The District argues that this land is "burdened with the obligation, in the form of an encumbrance, to pay the future assessments for maintenance and operation of the dikes, ditches and water pumps of the Drainage District." Citing two Oregon cases, United States v. Aho, D.C., 68 F.Supp. 358, and United States v. Florea, D.C., 68 F.Supp. 367, the Drainage District contends that

---

6. 28 U.S.C. § 1346.

7. 28 U.S.C. § 1346; see United States v. Dickinson, supra.

8. 28 U.S.C. § 1346(b); see Indian Tow-

ing Co. v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48.

9. See Public Law 392, 84th Congress, 2d Session, approved January 25, 1956 (70 Stat. 4).

its assessments are encumbrances on the land, and since the United States is taking the land, it must liquidate the encumbrances.

■ The short answer to this objection may be that the United States here, as distinguished from United States v. Aho, supra, and United States v. Florea, supra, is, with the exception of the small acreage around the pumping station, acquiring only a surface easement, the fee interest, subject to the surface easement, being retained by the landowners. Consequently, this land is still subject to assessment by the Drainage District in the name of the landowners. But it is not necessary to dispose of the District's claim on that basis. Judge James Alger Fee, who wrote both the Aho and Florea cases, concedes that "The status of incumbrances upon the real property is to be determined by the laws of the particular state in which the land is located." United States v. Aho, supra, 68 F.Supp. at page 360. Whatever may be the law of Oregon with reference to drainage district assessments, it is clear in Louisi-

ana that these assessments are not encumbrances running with the land, but are in fact taxes assessed annually.[10] And it is also clear that interests in land owned by the United States are not subject to any form of local or state taxation. United States v. County of Allegheny, 322 U.S. 174, 64 S.Ct. 908, 88 L. Ed. 1209; Mayo v. United States, 319 U.S. 441, 63 S.Ct. 1137, 87 L.Ed. 1504; Mullen Benevolent Corp. v. United States, 290 U.S. 89, 54 S.Ct. 38, 78 L.Ed. 192; Yoknapatawpha Drainage Dist. No. 2 v. United States, 5 Cir., 242 F.2d 925.[11]

IV.

■ Landowners, citing Rule 71A(l) and United States v. 254.35 Acres of Land, etc., D.C., 46 F.Supp. 913, 915, 916, suggest that they be reimbursed for their costs in these proceedings. They rely also on the language of 33 U.S.C.A. § 593 which provides that the state agency for whom the United States is condemning the property shall pay "all expenses of said proceedings and any award that may be made thereunder." The argument seems to be that Rule 71A(l) was in-

10. Constitution of Louisiana, 1921, art. 14, § 14(a), dealing with ad valorem taxes, reads as follows:
"Municipal corporations, parishes and schools, road, subroad, sewerage, drainage, sub-drainage (waterworks and sub-waterworks) districts, and irrigation districts hereinafter referred to as subdivisions of the State, may incur debt and issue negotiable bonds, when authorized by a vote of a majority in number and amount, of the property taxpayers qualified to vote under the Constitution and laws of this State, who vote at an election held for that purpose after notice published or posted for thirty (30) days in such manner as the Legislature may prescribe, and the governing authorities of such subdivisions shall impose and collect annually, in excess of all other taxes, a tax sufficient to pay the interest annually or semiannually and the principal falling due each year, or such amount as may be required for any sinking fund necessary to retire said bonds at maturity."
LSA–R.S. 38:1632 reads:
"All drainage taxes, together with all penalties for default in payment of the taxes, and all costs in collecting the taxes, "shall, from the date of filing the

certificate hereinafter mentioned in the office of the clerk of court and recorder of mortgages for the parish wherein the lands and other properties are situated, until paid, constitute a tax lien upon all of the lands and other property against which the taxes shall be levied. * * *"
See also LSA–R.S. 38:1543 and 38:1619.

11. In the Yoknapatawpha case, 242 F.2d at page 929, the Court said:
"In view of our conclusion that no lien existed on the land here being condemned and that no indefeasible interest or estate is being taken from the District in this proceeding, it follows that no future assessment can be levied on these lands now owned by the United States whether the levy be termed a local assessment, Mullen Benevolent Corp. v. United States, 1933, 290 U.S. 89, 54 S.Ct. 38, 78 L.Ed. 192, or may be deemed a tax, since it is established that property of the United States is immune from any form of state taxation. United States v. Allegheny County, 1944, 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209; Mayo v. United States, 1943, 319 U.S. 441, 63 S.Ct. 1137, 87 L.Ed. 1504, and Jefferson County, Fla., v. United States, 5 Cir., 1947, 164 F.2d 184."

tended to change the existing jurisprudence to the effect that "in the absence of a statute directly authorizing it, courts will not give judgment against the United States for costs or expenses." United States v. Worley, 281 U.S. 339, 344, 50 S.Ct. 291, 293, 74 L.Ed. 887. That landowners have misconceived the purpose of Rule 71A(*l*) with reference to the assessment of costs against the United, States is clear from a simple reading of the Notes of the Advisory Committee on the Rules which drafted Rule 71A(*l*).[12]

The provision of 33 U.S.C.A. § 593 which requires the state agency to pay all expenses of these proceedings obviously means the expenses of the United States in acquiring the property. The landowners forget that the state agency is not a party to these proceedings and, consequently, no costs can be assessed against it. The only party to these proceedings against whom landowners' costs can be assessed, other than the landowners themselves, is the United States. Since there is no statute specifically authorizing the assessment of such costs, they may not be so assessed. United States v. Worley, supra; United States v. Chemical Foundation, Inc., 272 U.S. 1,[13] 47 S.Ct. 1, 71 L.Ed. 131.

The other objections to the Commission's report raised by the landowners concern primarily factual issues. These issues have been carefully and comprehensively treated in the Commission's report. Its treatment thereof is not clearly erroneous. In fact, after a study of the record, the Court adopts the Commission's factual findings as its own.

Judgment accordingly.

12. The Advisory Committee's Notes, in pertinent part, read:
"Note to Subdivision (*l*): Since the condemnor will normally be the prevailing party and since he should not recover his costs against the property owner, Rule 54(d) * * * is made inapplicable. Without attempting to state what the rule on costs is, the effect of subdivision (*l*) is that costs shall be awarded in accordance with the law that has developed in condemnation cases. * * * Even if it were thought de-

sirable to allow the property owner's costs to be taxed against the United States, this is a matter for legislation and not court rule."

13. See also United States v. Knowles' Estate, 9 Cir., 58 F.2d 718; United States v. Southerly Portion of Bodie Island, N. C., D.C., 114 F.Supp. 427; In re Condemnations for Improvement of Rouge River, D.C., 266 F. 105. See contra United States v. 254.35 Acres of Land, etc., D.C., 46 F.Supp. 913.